J. JONES, J.,
specially concurring.
I reluctantly concur in the Court’s opinion because, in order to reach what I think is a correct and just outcome, we would have to rewrite the language employed by the Legislature when it enacted I.C. § 5-246 in 1991. To allow the Choules to conduct activities that interfere with Twin Lakes’ reservoir and the storage of water therein is inconsistent with the traditional concept of easement rights, but the wording chosen by the Legislature, even though ill-advised, permits of no contrary reading. It seems clear that the Legislature did intend to change the common law conception of what an easement is because it provided not only that the property owner subject to a nonexclusive prescriptive overflow easement had the right to use his underlying property “for any purpose otherwise consistent with ownership thereof,” but that such usage could interfere with the storage of water on the property. As a long-time observer of legislative action in the water rights arena, it is difficult to fathom what was going through the Legislature’s mind when it chose this particular wording. It may be that the Legislature was trying to address a particular situation, without realizing the future implications of its choice of wording. The language in the short title of the legislation that pertains to this provision indicates a design “TO PROTECT CERTAIN PRIVATE AND STATE PROPERTY RIGHTS.” The stated desire to protect certain property rights rendered the prescriptive overflow easement rather toothless. Obviously, the Legislature realized the unfortunate implications of its wording choice in 2010, when the problem was fixed. Twin Lakes acquired its prescriptive overflow easement during the interim and is conse *221 quently visited with an unjust result that this Court is without power to remedy.